## AFFIDAVIT OF SPECIAL AGENT MATTHEW J. MCCARTHY

I, Matthew J. McCarthy, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"). I have been so employed since January 5, 2004. Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Resident Alien Cards, Form I-551 (hereinafter "green cards"). Based upon my training, I know that persons, usually aliens, manufacture and distribute counterfeit green cards and social security account number cards and other false identification documentation. The counterfeit documents are then distributed and sold to aliens who are illegally present in the United States. I am familiar with the various criminal statutes which make it unlawful to manufacture and sell green cards, including Title 18, United States Code, Section 1028 (a)(1)-(6) (producing identification and false identification documents), and Title 18, United States Code, Section 1426(b)(using and selling false naturalization, citizenship and registry documents).

2. The information contained in this affidavit is based on my personal involvement in this investigation, my

training and experience, information provided to me by other law enforcement officers and agents of ICE, and information provided to me by a confidential source ("CS"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation.

3. I submit this affidavit in support of a criminal complaint against HORACIO M. NETO, a/k/a Horatio M. Neto a/k/a "Marcelo" ("NETO"), DOB: -/-/1965, SSN: - - 0699, for transferring false identification documents, in violation of Title 18, United States Code, Section 1028(a)(2).

**BACKGROUND**

4. In February 2005, I received information from a cooperating individual regarding two male individuals by the names of "Marcelo" and "Fernando", who are allegedly involved in the sale of counterfeit green cards and social security cards in the Marlborough, MA, area. This cooperating witness provided your affiant with a telephone number of (508) 624-6418 as the way to contact these individuals for the documents.

5. On June 1, 2005, the CS placed a consensually monitored and recorded telephone call to (508) 624-6418 to inquire about obtaining fraudulent green cards and social security cards. According to the CS, he/she made contact

with an individual who claimed that he could assist him/her in obtaining the aforementioned documents (a set, which includes one green card and one social security card) for $100.00. According to the CS, this male individual identified himself by the name "Marcelo" and stated that he could take the photograph used in producing the green card if the CS did not have one available. This individual gave the CS a telephone number of (774) 285-6388 as a future means of contact. This unknown male individual and the CS agreed to speak at a later date.

6. Public Record checks showed that the first telephone number called by the CS, (508) 624-6418, belongs to a HORACIO NETO, residing at 110 Boston Post Road, Marlborough, MA. Record checks on this address showed a HORACIO NETO residing there, with a social security number of --0699. The second telephone number called by the CS, (774) 285-6388, is also subscribed to a HORACIO NETO, with a birth date listed as -/-/1965 and a social security number of --0699. Subsequent Social Security Administration checks revealed that this is a valid social security number belonging to HORACIO NETO with a date of birth of -/-/1965. ICE record checks also revealed an individual named HORACIO NETO with a date of birth -/-/1965.

**The First Fraudulent Document Purchase**

7.   On June 10, 2005, at approximately 12:40 p.m., the CS placed a consensually monitored and recorded telephone call to (774) 285-6388 to arrange the purchase of the fraudulent documents. After making contact with Marcelo, the CS inquired about obtaining two sets of counterfeit social security and green cards. According to the CS Marcelo agreed to accommodate this request. As a result of this telephone call, a meeting was scheduled to take place in the Price Chopper parking lot located in Marlborough, MA.

8.   At approximately 12:45 p.m., ICE agents met with the CS in Marlborough, MA, to prepare for the scheduled meeting. During this meeting an integrity search was performed upon the CS and his/her vehicle. Also, your affiant provided the CS with a digital camera memory card, as requested by the unknown male individual during a previous telephone conversation. On this memory card were two green card style photographs, which were to be given to the unknown male individual to be used on the false identification documents. Also, $200.00 was given to the CS to use in purchasing the documents. In addition, ICE agents affixed an electronic transmitter and recorder on the CS to monitor and record the meeting.

9.   ICE agents then arrived in the vicinity of the

Price Chopper parking lot and established stationary surveillance positions to await the unknown male individual's arrival.

10. At approximately 12:55 p.m., the CS was observed pulling into the Price Chopper parking lot. Shortly thereafter, a male individual (later identified by the CS as Marcelo) driving a black Honda Accord, bearing Massachusetts registration 66RA38, approached the CS. Marcelo then entered the CS' vehicle. During this meeting the CS provided Marcelo with the aforementioned digital memory card as well as the names and dates of birth to be used on the fraudulent documents.

11. The meeting concluded at approximately 12:57 p.m., after which Marcelo exited the CS' vehicle and entered the black Honda Accord. ICE agents surveilled Marcelo directly to 195 East Main Street, which is located across the street from the Price Chopper parking lot. At this address Marcelo exited the vehicle and entered the apartment building. At this time the CS advised your affiant that Marcelo stated that the documents would be ready for delivery in approximately forty minutes.

12. At approximately 2:16 p.m., Marcelo exited the apartment complex and entered the aforementioned vehicle. Marcelo then drove directly to the Price Chopper parking lot

and met with the CS inside of the CS' vehicle. Once inside of the vehicle Marcelo provided the CS with the two sets of fraudulent documents in exchange for $160.00.

13. Shortly after this meeting terminated your affiant met with the CS to obtain custody of the documents. Upon inspection of these documents, I determined that the photos on the green cards where the same photos I provided to the CS. Subsequent ICE record checks revealed that all of the Alien Registration Numbers which appeared on the fraudulent green cards provided by Marcelo are either invalid or assigned to other persons.

**The Second Fraudulent Document Purchase**

14. On July 15, 2005, at approximately 1:06 p.m., the CS placed a consensually monitored and recorded telephone call to Marcelo at (774) 285-6388 to arrange a meeting in which the CS would purchase three sets of fraudulent social security and green cards. As a result of this telephone call Marcelo agreed to meet the CS at the Price Chopper parking lot.

15. An integrity search was then conducted upon the CS and his/her vehicle. An electronic monitoring and recording device was affixed upon the CS as a way to monitor and record the meeting. A digital memory card was then given to the CS containing three green card style photographs, which

would be given to Marcelo for use in the production of the documents. Also, $240.00 was given to the CS for use in purchasing the documents.

16. Agents then set up a stationary surveillance perimeter around the Price Chopper parking lot and 195 East Main Street, in Marlborough, MA. At approximately 1:08 p.m., agents witnessed Marcelo exit the apartment complex and enter the aforementioned vehicle. Once past the Price Chopper parking lot, surveillance did not ensue. At approximately 1:32 p.m., this same vehicle driven by Marcelo entered the Price Chopper parking lot and approached the awaiting CS. During this meeting, the CS gave Marcelo the aforementioned digital memory card containing three green card style photographs to be used in the production of the documents.

17. This meeting concluded at approximately 1:35 p.m. From the Price Chopper parking lot, Marcelo was surveilled directly to 195 East Main Street, in Marlborough, MA. It was here that Marcelo exited the vehicle and was witnessed by ICE Special Agent Dachuna entering Apartment #60. Marcelo stayed at this location until approximately 2:00 p.m., when he exited and entered the aforementioned vehicle.

18. At approximately 2:15 p.m., the CS received an unmonitored telephone call from Marcelo. According the CS,

Marcelo was having some difficulty with the computer program used in the production of the fraudulent documents. The CS offered his/her assistance in determining what may be the problem with the equipment. Marcelo agreed to meet the CS in the Price Chopper parking lot for the purpose of escorting the CS to his residence.

19. At approximately 2:23 p.m., Marcelo appeared in the Price Chopper parking lot in the aforementioned vehicle. The CS then followed Marcelo to 195 East Main Street, Apartment #60, where they both entered at approximately 2:15 p.m.

20. During this meeting, the CS witnessed and overheard various individuals in the apartment building call Marcelo by the name Horacio. When the CS questioned Marcelo about this, Marcelo stated that his name was indeed Horacio. At this point the CS began to call Marcelo by the name Horacio. The CS then witnessed Horacio using the computer system used in the production of the fraudulent documents. The CS also witnessed multiple cameras in the apartment. The CS exited the apartment at approximately 3:10 p.m.

21. During a debriefing with the CS, the CS told your affiant that due to a technical problem with the computer system the documents were unable to be obtained at this time, but that they would be ready the following morning at

5:00 a.m., after Horacio had time to fix the problem. According to the CS, Horacio stated that he only rented the apartment as a place to manufacture the fraudulent documents.

22. On July 16, 2005, at approximately 4:41 a.m., the CS placed a consensually monitored and recorded telephone call to Horacio to inform him that he/she would be at 195 East Main Street, Apartment #60, shortly to pick up the documents. The CS was then equipped with an electronic monitoring and recording devices to monitor and record the meeting, and an integrity search was conducted upon the CS' vehicle.

23. At approximately 4:55 a.m., the CS entered Horacio's apartment and purchased two sets of fraudulent social security and green cards for $160.00. According to the CS, Horacio stated that he accidently erased one of the photos from the memory card; therefore he could only manufacture two sets.

24. Shortly after this meeting, your affiant met with the CS for the purpose of debriefing and to obtain custody of the two sets of fraudulent documents. Upon inspection of these documents, I determined that the photos on the green cards were the ones I provided to the CS. Subsequent ICE record checks revealed that that all of the Alien

Registration Numbers which appeared on the green cards provided by Horacio are either invalid or assigned to other persons.

26. In sum, I have a total of four documents from the above-mentioned undercover purchases. I have reviewed these documents and have determined that they are counterfeit identification documents. A review of records of the ICE and the Social Security Administration reveals that the numbers listed on the green cards and social security cards are either invalid, or belong to an individual other than the person listed on the documents.

26. Furthermore, I have reviewed all of the documents purchased during the undercover purchases, and based on my training and experience, they appear to have been produced by a computer. The fonts that appear on both the fraudulent green cards and fraudulent social security cards are characteristic of a computer printer. The fonts appear smooth and lack the identification characteristics common to a typewriter.

27. Based on the forgoing information, I believe probable cause exists to conclude that on or about June 10, 2005 and again on or about July 15, 2005, HORACIO M. NETO, a/k/a Horatio M. Neto, a/k/a Marcelo, did, knowingly and without lawful authority, manufacture and transfer false

identification documents, in violation of 18 U.S.C. § 1028(a)(2).

                                                                            /s/ Matthew J. McCarthy
                                                                            Matthew J. McCarthy
                                                                            Special Agent
                                                                            United States Immigration
                                                                            and Customs Enforcement

Sworn and subscribed to me this 9th day of August, 2005.

                                                                            /s/ Judith Gail Dein
                                                                            JUDITH G. DEIN
                                                                            United States Magistrate Judge